Case No. 14-5152, Safari Club International et al. appellants v. Sally Jewell in her official capacity as Secretary of the Department of the Interior et al. Ms. Simon for the appellants, Mr. Damasio for the athletes. May it please the Court, my name is Anna Sideman and I'm here today on behalf of the Plaintiff Appellants, Safari Club International and the National Rifle Association of America. And I hope to reserve two minutes of my time for rebuttal. I'd like to start by clarifying that Safari Club and NRA have standing to challenge Federal Defendant's April 4th importation ban decision for Tanzania and that our challenges are right for review. Contrary to the Federal Defendant's arguments... that's raised by the District Court's footnote 3, where the Court said that it recognizes that defendants have raised questions regarding subject matter of jurisdiction, but the questions are sufficiently close and the lack of a reparable injury is simply clear that it will proceed to rule on the need for expedition first. Isn't that a serious steel-co problem? Doesn't the Court have to resolve its jurisdiction before it can take on this issue? My understanding of the law is that if the Court wants to address a threshold matter that does not go to the merits, the Court can basically deal with a threshold matter being irreparable harm on a preliminary injunction before it can address jurisdiction. Have you read Senecam and the other cases that are cited? I don't recall them offhand. Because they're cited in the blue brief. I mean, the Court there makes a distinction between all of the kinds of issues that the Court... Well, first of all, it says a key question. This is what the Supreme Court said. The District Court can decide a threshold if it, quote, entail any assumption by the Court of substantive law declaring power. Now, if you look at the District Court's decision here on preliminary injunction, the District Court goes through the standards and reviews the facts and makes a judgment that this is not irreparable injury. And were we to affirm that, we would presumably, or reverse it, we would write an opinion one way or another which would involve substantive law declaring power. So I'm wondering why there isn't a serious Steel Co. problem here because of that. The types of issues that the Supreme Court has said can be resolved without, before jurisdiction, all seem to be issues like foreign nonconvenience and abstention which dispose of the case. But here we have a case that's still in the process of being briefed in the District Court. This case will continue unless the District Court says there's no jurisdiction. Well, I would not disagree with you, Your Honor. I agree that the cases that were cited were addressing issues differently, different issues than irreparable harm. I do take the position that the standard for irreparable harm and standing are quite different. Correct. So I think the jurisdictional issues are different. But we don't necessarily disagree that the court below should have addressed jurisdictional issues. We're simply in a situation now. So maybe we should say that we should send it back for the District Court to do that, to address the jurisdictional issues. Because actually, you know, if you think about it, the District Court didn't need to deny the motion for preliminary injunction, right? I think the District Court could have just said, I'm not going to address it until I resolve jurisdiction. Because the consequences would have been exactly the same, right? I agree. Can I just ask also, in your understanding, isn't it true that the standing issue is easier than the irreparable injury issue, right? Because what's required to show harm for standing is way less. Agree. So if the District Court thought that it was easy or easier to decide irreparable injury, it would be even easier. I mean, it should be easier to decide the first question, the standing question. Again, I would not disagree with the court. We feel very strongly that we have standing, and we think that that's a much easier problem or issue to address than demonstrating the higher standard for irreparable harm. We've taken a quick look at the docket, and maybe you can tell me more than I can tell just from the docket. I take it the standing issue, what's called subject matter jurisdiction in the District Court, has already been briefed in the District Court. Where is it now? Yes. Several motions to dismiss have been briefed, both on jurisdictional and non-jurisdictional issues. Everything has been briefed, including a separate briefing because of the change in circumstances due to the July 31st decision to which we refer it. And so the court now has held those. We don't know if the court's waiting for this court to rule, but has not made a decision yet. When was the last filing? The last filing was approximately two weeks ago. And I checked also. I guess we all did. I didn't see anything that, based on the docket in the District Court, I didn't see anything that's left to be filed. It looks like it's complete. Is that right? Yes, that's correct. Everything the District Court has asked for is completed. Yes. All right. So do you have any views about sort of a second question, which is, and I don't mean to signal one way or another about this, but if I thought that addressing the motion for preliminary injunction does create a Steel Co. problem, do you have any view about whether we should now decide the standing of the jurisdictional questions, or should we have the District Court do that first? Well, obviously we would prefer that if this court were to take up jurisdictional issues, it would find them in our favor. Of course you would. I know. You have to do this with a Rawlsian veil, where you don't know in which way we're deciding. Your question is, if we agree with you, you want us to take it up. And if we don't, you want us to send it back, right? Understood. Okay. Give me a principle reason for having this question. It's the principle of self-interest. Very true. Is that true? Is that your answer? Well, I agree that the court below, by making the ruling on irreparable harm, without first addressing the jurisdictional issues, is problematic. And the – at least my understanding is that this court, if it is going to address the lower court's decision on irreparable harm, will have to address the jurisdictional  And we would actually – No, but that wasn't my question. Do you want us to – let's assume we agree with you that it's problematic, about what the District Court did here. Do you have a thought about what's the best thing for us to do? On the one hand, one way to look at this is, well, we can look at the record just as easily as the District Court can, right? So we could decide it. On the other hand, it's fully briefed in the District Court, and is there a reason to send it to the District Court, let the District Court finish the process, resolve the jurisdictional issue first? That's my question. I think a practical reason for us is we would prefer not to be arguing jurisdiction before this panel first, and we'd prefer to have the court below, yes, address the jurisdictional issues, and if for some reason – And then withdraw your appeal. Pardon? Then withdraw your appeal. Yeah. It's real simple. We could definitely withdraw our appeal. But what our intent in filing this appeal was, was to try and expedite the determination on our preliminary injunction. This appeal being, then, what you just said, relating to the April 4 ruling. The April 4 decision for Zimbabwe and the April 4 decision for Tanzania, yes. So the April 4 finding has now been overtaken, so it would seem, by the July 22 finding. Are both of them in the dispute going on now in the District Court? Have both of them – put it another way. Arguably, the April 4 finding is not utterly irrelevant because there were two persons who acted between April 4 and July 22. Is their interest being debated as well in the District Court? Yes, unless the District Court makes a determination based on the motions that have been presented that that case is – that our challenge to the April 4 decision for Zimbabwe is moved. And our position, as we briefed before you, is that it is not moved. So that is one of the issues that the court below is going to resolve. And so the questions of whether it can be retroactive, et cetera, that's all been briefed in the District Court? Yes, it has. Well, what do you have to gain here? Well, our hope is, because of the way that the court below has not made determinations on jurisdiction, et cetera, and immediately made it her determination exclusively on the issue of irreparable harm, we were put in a situation where we had to try and find a way to move along a decision as to whether we could get some temporary or preliminary relief for our clients as quickly as possible. But you agree – you seem to agree with us that – you seem to agree with us that the District Court's approach was – you use the word problematical, right? And if it's a problem there, it's a problem here. I mean, if the District Court shouldn't have addressed the preliminary injunction issue prior to addressing jurisdiction, we certainly can't either, correct? Well, my feeling is that this court can take up jurisdiction at any time. Right. So it's faunting. But I was just following up on your question to – your answer to Judge Ginsburg's question, because you said two things to us. You said, one, you agree with us, with our questions, that there may be a problem here, a steelcoat problem, right, in the District Court. So you want – so your answer to Judge Ginsburg is you've appealed to try to get this thing moved along quickly, right? Correct. Okay, but if there's a steelcoat problem in the District Court, there's a steelcoat problem here, we can't address the preliminary injunction question either. So the only thing we could do to expedite this is to now decide the jurisdictional question. That's why I asked you whether you want us to do that or do you want to let the District Court do it. Is that right? If we were to resolve the jurisdictional question in favor of the case of jurisdiction, we could go on to review the District Court's decision on the PI. Correct. That's a good point. Well, and that's the very reason why we move forward and argued on the jurisdictional questions, because it is our hope that you will make a decision that will reverse the lower court's decision on irreparable harm and give us the opportunity to go back to the District Court and then have her consider the remaining criteria for a preliminary injunction. Well, okay, so if we did that and if we resolved everything in your favor, the District Court would then enter a preliminary injunction against, well, somehow protect the two people who acted between April and July. What would that preliminary injunction say? Well, the preliminary injunction would not only apply to the two individuals who hunted between April 4th and July 31st. It would also apply to individuals who have hunts planned for Tanzania, and some of them have hunts planned for October and November. But they're not entitled to a PI based on the April 4 ruling, which is all you've challenged here. We challenged the April 4th importation ban decisions for both Tanzania and Zimbabwe. Right, but persons who didn't act in reliance under the April 4 regime but acted under the July 22nd regime are not within the scope of your request for a PI. But that applies only to Zimbabwe. Yes, yes, right, right. So the April 4th decision extends through until now for those who hunt in Tanzania. I see, I see. So our intent would be to help those who hunted between April 4th and July 31st in Zimbabwe to help them to be able to import their sport hunted elephants, but also to help prospectively those who have planned hunts for Tanzania who may still benefit if a preliminary injunction is granted. So in that scenario, in order to try to at least support our claim that our members had irreparable harm, I would like to just spend a couple of minutes describing why we feel, or why it is our position that we demonstrated irreparable harm and why the court below did not rule correctly. We've demonstrated concrete evidence of irreparable harm that is not speculative. We produced declarations of outfitters and hunters that showed that hunters are, in fact, canceling their hunting trips just as the Fish and Wildlife Service wanted and encouraged. We also showed that the declarations all seem to be a little bit hedged, right, or maybe it was just two. One of them said, I get four to five such outings a year, right? Are you referring to the declarations of the outfitters? Yeah. Were you not? I'm sorry. No, no, I just want to make sure I understood your question. Yeah, sorry. Well, it depends. There were different declarations from different outfitters, each of whom have a different number of elephant hunts that they provide. Were there more than two such outfitters and declarations? There were more than two outfitters. Okay, well, I'm thinking of two. I have only two in mind. One of which said, well, ordinarily I get four to five of these per year, but it wasn't at all specific to whether they came from the U.S., I think. It didn't refer to any cancellation, no concrete example. The other one said, maybe gets one a year, and he said, I may get one a year. I think, well, there are a few things at play here, and I realize I've gone over my time. That's all right. As long as you're answering the judge's question, you can take as much time as you want. Thank you. One is that we prepared these declarations within a very few weeks after the importation ban was announced. So we had to freeze time as to what was happening at that very moment. And within a very few weeks after the importation ban was implemented, those outfitters were already having cancellations. That doesn't indicate whether or not there have been more cancellations since then. That's what we had in mind. Those are not in the current record, correct? That's correct. They're not in any of the declarations or anything. So you may have a stronger case on harm, irreparable harm, in the moving vehicle in the district court. Correct. Than you could have here where you're frozen with the complaint. That's correct. What we were able to demonstrate with those declarations is that people were canceling their hunts, just as the Fish and Wildlife Service encouraged them to do. So there was evidence of cancellations. There's also evidence, and this goes to your question. Yes, outside of this record, but in the other one. No, no, in the record we had before you, there's also evidence that U.S. hunters are the primary or main hunters of elephants in Zimbabwe and Tanzania. So we produced the declaration of Charles Jonga, who is the director of the Campfire Association in Zimbabwe, and he showed that U.S. hunters booked the overwhelming majority of elephant hunts on the campfire concessions. But he didn't have any cancellations at that point. He did not describe cancellations in his declaration. Not all of the information is in any one specific declaration. In order to understand what's happening, it's necessary to look at all of the declarations together to see the events that are unfolding. Let me ask you this. If you were to prevail below on a permanent injunction, then indeed for a time, even on a preliminary injunction, the people who acted between the April and July findings would get relief. For Zimbabwe, yes. And for Tanzania, they would get relief for any elephant hunted during 2014. So what we were able to show is that there are cancellations. The majority of hunters hunting elephants in Zimbabwe and also Tanzania, if you look at the Tanzania enhancement finding for 2014, it shows that U.S. hunters are the primary recipients of hunting licenses in Tanzania. And if you also look at declarations like the one from Hermanus De Vries, it shows that it is the revenues from hunting that are being used to apprehend poachers. These are individuals in the field who are actually acting to stop poaching, which is the main reason why the Fish and Wildlife Service took this action. If you put those all together, the bottom line is that U.S. hunters are traveling less to hunt elephants in Tanzania and Zimbabwe. And this is just as the federal government wanted. The majority of hunters who go to the U.S. The loss of the number of hunters who go from the U.S. to these countries means less money for conservation and anti-poaching efforts. And that means less conservation for elephants. That's not their problem, is it? Oh, yes. Safari Club and NRA are not simply hunting organizations. They're conservation-based organizations. The interest that they have in hunting is sustainable use conservation. And if the money that if the countries I'd like to follow the money. Last question. And this is going back to just from my benefit, I guess, to clarify. I'll be asking you to repeat what you said before. The matter proceeding in the district court that's fully briefed and submitted. Is that on the P.I. or is that on the permanent injunction of the merits? It's actually a neither, Your Honor. The P.I. motion was not fully briefed. The only briefing that the judge below accepted was on irreparable harm. That's what she directed us to brief on. What is fully briefed are motions to dismiss, but not summary judgment motions. So we're still at the stage where we have not received the administrative record related to the part of the decision. So we're briefed on the motions to dismiss, on jurisdictional issues, and on some non-jurisdictional issues. But not yet on the merits of the permanent injunction. That's correct. And the jurisdictional issues are all the Steel Co. type problems? Yes, they're standing. They are mootness, ripeness, all of the various Article III issues. Thank you. Thank you. Good morning, Your Honors. Nicholas Demasio on behalf of the U.S. Fish and Wildlife Service. And may it please the Court, I guess I should start with the jurisdictional question. Good idea. Do we have a Steel Co. problem here? You know, I don't believe so. Why is that? And the reason why is because, as the Supreme Court held in Sinochem, and this Court followed up with in the National Association of Clean Water Agencies case, if the Court isn't addressing the merits of the plaintiff's claims, it doesn't need to assure itself of jurisdiction. It can use a non-merits ground to dispose of a motion without addressing jurisdiction. And here, the issue of irreparable harm. In all those cases, though, the issue is related to whether the party could be in, whether that case could go forward in this Court at all. That's not this issue. Well, I think in the National Association of Clean Water Agencies case, if I remember that case correctly, that was a motion to intervene. Right, and the Court said that it wasn't related. We said it wasn't related to the original case, to the pending case. So whether they had standing or not, they couldn't participate in this case. That party was out of the case. Sure. But fundamentally, what the Supreme Court said in Sinochem was if the Court is not presuming to issue a judgment on the merits. No, that's not what it said. It said that as long as the Court isn't exercising law-declaring power. Well, that was one aspect of what the Court said in that decision, but it's actually all one long sentence, and I'm afraid confusing sentence of the Court. Okay. I hope they're not listening. It says the critical point here, rendering a foreign non-convenience determination a threshold non-merits issue in the relevant context is simply this hyphen, and then it goes on to the law-declaring power question. And at one point the Court said, and I'm sorry I only have the quote in front of me here, but at one point the Court says, Jurisdiction is vital only if the Court proposes to issue a judgment on the merits. Well, you're ignoring the law-declaring language. I mean, you've picked out the language you like, but what about the law-declaring language? Isn't that if we agreed with you and wrote an opinion that there wasn't irreparable injury, we would be declaring the law. We would be able to cite that. Other panels could cite that as a binding decision of the D.C. Circuit on what irreparable harm means in this circumstance. That sounds law-declaring to me. I suppose that's one way of construing it. Another way would be to say that what the Court is deciding is in the context of a particular dispute between particular parties, without addressing what the merits of the underlying claims in that complaint are, all the Court is deciding is based on the lack of irreparable harm, there's no reason to provide preliminary injunctive relief at this time. And it can later go on to assess before addressing the merits of the claims in the complaint, it can assess jurisdiction, and that's precisely what's going on. Would that be the same if we said there is a basis for the preliminary injunctive relief? Well, you couldn't get that far, because you'd also have to address the likelihood of success on the merits and the balance of the equities and all of the other preliminary injunction factors. But do you think we can do all that without addressing the jurisdiction?  Because then you would be proposing to at least proffer an opinion on the merits of the underlying claims in the suit. So all we would do, in your view, and without any skillful problem, is to say, if you were to prevail, that there was no irreparable harm? That's correct. That's what the district court thought that it was doing. It certainly thought it had the power to reach only the irreparable harm question, because under this court's precedent, if there's no showing of irreparable harm, you can't get a preliminary injunction even if the other factors favor your position. So wouldn't the statement that there's no irreparable harm here and the record showing what fell short of irreparable harm be a statement declaring the law about the threshold as at least something greater than what we are looking at? It's a statement declaring the law only in the sense that it's addressing certainly an issue that the case could be cited in the future, but I think the important point under Sinachem and the other cases following it is that they all seem to focus on this language of the Supreme Court that you have to be issuing a judgment on the merits. And if you're not addressing the merits of the legal claims, this issue of irreparable harm is a peripheral preliminary issue. But irreparable harm can be shown only if there's death or dismemberment. That would certainly be a statement of the law, Your Honor. And therefore they fall short, correct? I agree there's some confusion over this issue. Aren't all the cases, literally all the cases in which the court and this court has said it's a threshold issue, ones in which the law is declared? In Galvin, we declared the law about sovereign immunity, whether or not sovereign immunity applied. In Orszag, we declared whether or not a particular matter was committed to agency discretion. In Cramer, we declared whether Rule 60b-6 applied. In Sinachem, the court declared what the law was on forum nonconvenience. So in each of these cases, we declare the law. So the Supreme Court, it seems to me, must have meant something more than a citable opinion, because even questions about jurisdiction are citable and binding on lower courts or on the same court. I totally agree, Your Honor. I think that is what leads me to believe that the important determinative factor is whether or not the law declaring that's going on has to do with a judgment on the merits, because it simply can't. But doesn't it have to be? So that's a point in your favor, but the question on the other side is, doesn't it, before we do this, don't we have to think, or doesn't the district court have to think that it's an easier question to decide the threshold question than the standing questions? Because, in fact, the point of Sinachem is to do this only when you avoid a hard jurisdictional question. The Court says at the end, if, however, a court can readily determine that it lacks jurisdiction, or I assume that it has jurisdiction, the proper course is to start with that ground. Well, I think it would be obviously up to the particular judge and Your Honors to decide which ground is easier to decide. If you decide that the jurisdictional issues are easily addressed and would dispose of the case, then you can use those. Do they have to dispose of the case, or do they just have to be easier? Well, here they just need to dispose of the motion. No, but what if they're easy, but they go in favor of the Petitioners? Why avoid those questions? I mean, it's really an issue of judicial economy for the Court. If the Court decides that the jurisdictional issues are too complicated and it's going to take more time to sort those out, then it's allowed to proceed to a subsidiary issue that's not on the merits and dispose of the motion that way. If the Court decides that it wants to assure itself of its jurisdiction, and this is why we put these jurisdictional issues in our appellate brief, if the Court decides that it wants to clarify jurisdiction, it certainly has the power and the authority to do so. But here, what the district court thought is that the issue of irreparable harm was so straightforward that the easiest thing to do to deny the preliminary injunction motion, because that's all we're here on, was simply to rule on irreparable harm. And one thing I do want to make sure I clarify here is that if you were to find in any way against us on that matter, and we don't think you should, the only thing that would happen here is a remand to the district court to consider the remaining preliminary injunction factors, because the district court has not yet ruled on those remaining factors. But under your theory, the district court would then have to resolve jurisdiction before it could do that, right? I believe it would, because it would have to get to ---- Let me ask you this question. Now that your position, then, is that the only thing a district court can do when faced with a motion for preliminary injunction and a jurisdictional question is deny it, can't grant it, without resolving its jurisdiction, right? Because to grant it would require a judgment about success on the merits, right? I believe that's correct. Okay, so then why are we, then, what's this all about? Why doesn't a district court just not act and resolve the jurisdictional question? Same result. What's at stake under your theory? The district court could simply say plaintiff files a motion for preliminary injunction. District court says, look, I can't resolve that without addressing jurisdiction because to grant a preliminary injunction requires assessing your likely success on the merits. So let's brief that. I think what the district court was attempting to do was make the most efficient ruling under the time-pressured circumstances that it faced. Wouldn't the most efficient thing to be just says let's brief? The district court wouldn't have had to write an opinion on denying a preliminary injunction. Just let's get the jurisdictional issue briefed, and then we'll either go on to a preliminary injunction or the merits. I think this is making the precise point. The district court thought that the jurisdictional issues were hard. And so rather than take the time to address those, it saw an easier route to denying the preliminary injunction motion. My point is that just directing briefing on the jurisdictional issue would have exactly the same effect. Well, it would have taken more time, though, in the district court's view because the district court felt that those jurisdictional issues were more complicated. Denying the motion for preliminary injunction, there's no court order, right? It would be just as if the district court had said just address jurisdiction. Do you see my point? I guess I'm missing it. Denying, refusing to address the motion for preliminary injunction is the same as denying it for lack of a reparable injury. So why not just brief the jurisdictional issue? Well, those jurisdictional issues were being briefed in the district court. And I think if the district court had taken the approach that you're suggesting, the appellants here would have been pretty unhappy, because they were asking for preliminary relief. They wanted it on an expedited basis. Can't you agree that the district court couldn't grant preliminary relief without resolving the jurisdictional issue? Correct. So why didn't the district court just say that and say let's address the jurisdictional question? I think it's... Speaking of judicial economy. Yeah. The district court, you know, the district court didn't provide a lot of guidance to us on exactly why it made this decision. But I think overall the idea was it felt that the preliminary injunction motion was patently unmeritorious because it had not demonstrated any amount of irreparable harm. And so it could easily deny the motion on that basis and take more time to thoughtfully consider whether or not it had jurisdiction over the underlying claims in the complaint. And that's what it's doing right now. All this court needs to do is uphold that, affirm that order of the district court, denying the preliminary injunction based on the lack of irreparable harm. The court was faced with a claim for a preliminary injunction in which the harm was without real doubt immediate and very significant. Could it go on then under your analysis and issue the P.I. while it sorts out the jurisdictional issue? Well, no, Your Honor, because... So it's just a freeze for 24 hours, don't hang this person? It sounds like a T.R.O. that you're describing. Well, we've got them all and everybody's present. So in that case, they would need to demonstrate a likelihood of success on the merits. And because that would in some way be presupposing to declare the law on the merits of the underlying claims, I would say the court has to assess its jurisdiction. Does the court have to decide its jurisdiction or just its likelihood of success on jurisdiction? Your Honors, unless you have further questions... That wasn't a joke, actually. I actually meant it. I mean, it was a joke, but I meant it. Imagine you have the circumstance. The execution is going to happen at midnight. There's a question about the court's jurisdiction. There's clearly going to be irreparable injury if it can't act after midnight. Does it have to finally decide a jurisdictional question, or isn't it enough just to decide that I probably, or maybe probably isn't a word, likely have jurisdiction, whatever? It seems to me that that ought to be the rule. I don't know whether or not. There must be execution cases where this issue has been raised. Yeah. I mean, certainly the court has the jurisdiction to act under exigent circumstances. And so I would say in that circumstance, as long as... entering an injunction in a case that might not have jurisdiction, how can it do that? Well, and I believe there is case law on this. I'm sorry I don't have it at my fingertips, but there is Supreme Court case law on this point that the court, when it's under exigent circumstances, the court has the jurisdiction to maintain... To protect its own jurisdiction. To protect its own jurisdiction. Definition. Mandamus. Yeah, that's Mandamus. There's a case, Shuttlesworth, I think. Right. That's Mandamus. In which, if the court does not have... Turns out later, the court does not have jurisdiction. You nonetheless have a duty to obey the Floyd order. That's correct. Can I ask two... Before you get... I know you want to move on, but of course you're out of time, so I do want to ask some questions. Sure. Two questions on the... One question on ripeness and one question on standing. On the ripeness question about whether you have to fill out a permit request, your opponents have provided us with this April 4th, 2014 letter. It certainly does seem like it would be futile to ask for a permit with respect to Tanzania. Tanzania, I'm sorry. Isn't that right? No, Your Honor. Why not? That letter does not in any way control the outcome of an individual permit application. Well, it says, in order to allow elephant trophies to be imported in the future, document the total offtake from the elephant population would need to be below the elephant's annual population growth rate. That's not a question that an individual permit applicant could raise, but in any event, I assume it's not a question that you think there's any chance they could provide you information with. On April 5th, after on April 4th, you announced that you didn't feel that way. Well, to answer the last point first, certainly these plaintiffs think that there's information to show that that's the case right now. I mean, if you look at their declarations, they seem to think that they have better information about the population of elephants in these countries and exactly how much poaching is going on. So if they simply provide that information to the service, the service has said it will take a look at it. They represented that they think they have this particular kind of information that you're demanding. What I'm saying is if you look in the declarations, things that they say that they know in those declarations would go to showing this type of this type that, in fact, elephant populations are so stable in these countries that the number of elephants being taken would not overall impact the viability of the species. And they seem to be saying this in some of their declarations, that they have this knowledge that there's more elephants in these countries and that the populations are more stable than the service is aware of. And part of our point here is, if you really think that's true, shouldn't you have to bring that information to the service as part of an available permit process and say, here you go, here's the information that shows that what you said before isn't correct, and allow the agency to adjudicate those claims in the first instance rather than this court? Let me ask my second question, which has to do with the economic injury to the safari organizers. Why doesn't the Fund for Animals v. Norton case support, if not resolve, their point? In that case, we held that because the fees paid by sport hunters are the primary source of funding for the Argali conservation program, if the fund succeeds in barring American hunters from bringing their trophies home, some hunters will not travel to Mongolia to hunt the Argali, and the revenues that support the conservation program will decline. That actually supports their conservation claim, but doesn't it also support their claim? Isn't that alone enough to support their claim of economic injury to the safari organizers? No, Your Honor. For the purpose of standing, I'm talking about. The pivotal point of distinction between the Fund for Animals case and this case is that the litigant in Fund for Animals was the government of, I believe it was Mongolia. So any reduction in conservation funds going into that country would necessarily affect that litigant and provide that litigant with standing. What they haven't shown here in any way, well, first of all, we dispute that they've demonstrated a decrease in the number of hunters going to these countries. But even if they had, they haven't, and then they haven't shown that hunting money currently is being allocated properly to conservation. That goes to the conservation question. What about the economic injury to the organizers? They don't have to do the second step in order to have standing for their economic injury. Well, what the point is is that they haven't, they can't trace any hypothetical reduction in dollars to these specific outfitters. And that issue wasn't at issue at all in Fund for Animals because it was the government we were talking about. And any reduction was going to affect that entire country. Whereas these particular outfitters, they haven't drawn, traced any reduction in dollars to their specific pocketbooks. Is it going to be doubted that some outfitters are going to be hurt by this? Maybe they haven't found the right ones? Potentially, Your Honor, but you can't just assume that some outfitter out there somewhere might be hurt by a decision. You have to show why the particular members that they're talking about would be injured. And it's important. Well, if it's absolutely unavoidably the case that outfitters as a whole will be injured. There are a hundred out there, and we don't know which one or two are going to lose the business, but the business is going to be gone. Why bother with searching them out? Well, because you have to show, in order to show standing, you have to show that the precise litigant before you has been injured. Not that some other litigant, you can't base your standing on an injury to some other third party that exists out there somewhere in the world. That's the bystander's argument that we raised in our brief about, you know, the whole point of standing is to make sure that this litigant has been injured and has jurisdiction to stand before this court. So if I get, let's suppose I get a copyright holder, and I get royalties from the Copyright Royalty Tribunal of the government, and something is happening that is going to suppress my song being played, perhaps it's indecent, has been declared indecent somehow by the government, and I'm challenging that on the First Amendment. There's no question I'm going to lose royalties if the song isn't played. Well, in that case, you've demonstrated an injury to the precise litigant that's before the court, correct? I mean, that's the point, is that this organization... Okay, well, if it's a listener, I want to hear these songs, and whoever owns the copyrights, I don't even know who they are, are clearly not going to get royalties if they're not played. Well, are you, so you're talking about an injury to the listener, or... I'm complaining that I don't get to listen. Correct. I don't have an economic stake in this, so that's my injury. You've demonstrated an injury. That's the injury. Correct, correct. That's like looking at the apes in the zoo, in that case. You know, and just briefly, unless your honors have other questions. Have you answered Judge Ginsburg's question? Yes. Okay, any other questions? I'll give you one second here, two seconds to wrap up. Sure. I'd just like to point out very briefly that, in fact, when you look at the declarations that are in the record here, more of the hunters that they identified said that they were going to continue with their hunts than said that they would cancel. They only identified two out of 30 hunters of their own who said that they were going to cancel their hunts. There simply is no evidence in the record of a substantial decline in U.S. hunters going to these countries. You don't need a substantial decline for standing, do you? No, for irreparable harm. Yeah, but we're asking you about standing. Oh, excuse me. I was turning to the irreparable harm issue. And for standing, no, you just have to show an identifiable trifle. But for irreparable harm, you need to show a certain great and imminent injury. And my point here is that they haven't demonstrated any reduction in any injury to conservation interests because they haven't demonstrated a substantial decline in U.S. hunters or any hunters going to these countries, and the services analysis shows that hunting dollars already are not being properly allocated to conservation. I think we have the argument, unless either of my colleagues have questions. If I could just point briefly, even if the same number go, where they can't show that there's any concrete diminution in the number, those who do go will not be able to import their trophies, right? Correct. So they will incur whatever burden is involved in storing them outside the United States. Is that not an adequate? No, because they haven't placed any evidence in the record regarding that burden. There's no evidence in the record regarding costs or harm to the trophies or inability to store. Why isn't enough just that they can't bring them home? Why isn't that a sufficient injury? In our cases about the ability to admire animals in the zoo, other things like that. You're talking about for standing purposes. Yes, I'm only talking about for standing purposes. Why isn't it enough that they can't bring the trophies home? We're not making this argument with respect to standing. We're making this argument with respect to irreparable harm, and in that context you need to show an injury that is beyond remediation by relief at the end of the suit. Which they could clearly get because then they can say when they can bring them home. Yeah.  Thank you. Thank you, Your Honor. I know she doesn't have any time left, but we have let the other side go on longer. Not the other side's fault, but the fault of the court, so we'll give you an extra three minutes instead of two minutes. Wow. Thank you, Your Honor. Cheers. That was in exercising his law declaring function. Well, I wanted to address the standing issues, and I did want to address the one issue that my opposing counsel raised with respect to the futility argument. The Federal Defendant's Counsel indicated that there isn't futility because our members presented declarations that showed that we have more information about the elephants than the federal government does, and I think that's an inaccurate assessment of the futility question. Certainly, our members gave anecdotal information about what they had seen with respect to the health of elephants. They also specifically gave information about how the hunting community assists in apprehending poachers and what role they play in reducing poaching, but what the letter from Assistant Director Brian Arroyo demonstrated was an ultimatum for information that is not accessible to the hunting community. And as Judge Garland correctly assessed, this is about information that won't be available. It's very specific. It's specific number ratios with respect to how many elephants are taken from all sources as compared to how many are born, and then also what Assistant Director Arroyo said, that that means that there must be a showing of a reduction in the poaching numbers. This is not something that individual hunters could obtain within the limited period of time for dealing with elephants that are taken in 2014. I also wanted to mention an issue with respect to irreparable harm. The court is correctly discerning between the differences in standards with respect to the harm that must be shown for standing as opposed to irreparable harm, but with respect to irreparable harm, we have demonstrated through concrete evidence that there is a reduction in the number of hunters going. That may not be the high number at this point. We haven't been able to demonstrate a high number, but we have been able to show that fewer hunters are going, that hunts are being canceled, and that that translates to less money going to hunting, to conservation of elephants in Tanzania and Zimbabwe. The one case I wanted to reference is the Alliance for the Wild Rocky case versus Cattrall, in which a court assessed an environmental and aesthetic injury, a loss to the ability to enjoy certain parts of a forest, and the percentage of the loss to the forest, the opportunity, was approximately, I think it was 127 of the amount of forest that could be enjoyed. And what the court said is, you don't have to lose the entire opportunity to qualify as irreparable harm. So our ability to demonstrate that there is a conservation loss should be sufficient to demonstrate irreparable harm. When we're talking about an environmental injury. Can I interrupt for one second? Yes. This is a question raised, I think, in your opening discussion. I take it your view is you now have more evidence about irreparable harm than you had at the time you originally asked for this preliminary injunction. I don't want to misrepresent. What my feeling is is that there is more evidence available, but I do not, I have not declarations to offer the court on that. No, no, and even if you could, it wouldn't matter. Right. Because it's not in our record. But nothing would block you from now presenting, even though you lost that point originally with the district court, nothing stops you from asking for a preliminary injunction again based on the additional evidence you have about actual cancellations rather than possible cancellations. Is that right? That's absolutely true. And we are considering filing either an amendment or a new motion for a preliminary injunction with respect to the newer decision, the newer importation ban that took effect on July 31st. So, yes, that is absolutely true. I also wanted to address the court's reference to Fund for Animals v. Norton. We raised that particular case or we addressed that particular case for several reasons, not specifically to show that it was the government of Mongolia who was also injured by the loss of revenues from potential loss of hunters, but also to reference the fact that this court acknowledged that the district court below had granted standing, granted intervention, intervention as a right, based on the conservation harms from the hunting community. Safari Club was an intervener in that case. And there is a very significant conservation-based harm that should not be ignored. That's a huge crux of our irreparable harm representation as well as our standing representation. Thank you very much. Thank you. We'll take the matter under submission.